IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KRISHANA ANDREWS o/b/o
T.A.                                                          PLAINTIFF


        v.                      CIVIL NO. 09-1005


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                               DEFENDANT


## MEMORANDUM OPINION

Plaintiff, Krishana Andrews, brings this action on behalf of her minor daughter, T.A.,

seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of

the Social Security Administration (Commissioner) denying T.A.'s application for child's

supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act).

**I.    Procedural Background:**

Plaintiff protectively filed the application for SSI on T.A.'s behalf on August 29, 2006,

alleging that T.A. is disabled due to sickle cell/hereditary anemia with the limited occurrence of

febrile seizures and symptoms of eczema/dermatitis. (Tr. 51-53, 65).  An administrative hearing

was held on April 8, 2008, at which Plaintiff testified.  (Tr. 21-38).  Plaintiff was represented by

counsel.

The ALJ, in a written decision dated September 16, 2008, found that T.A. was not

disabled, as T.A. did not have an impairment that met or was medically or functionally equal to

a listed impairment.  (Tr. 11).  The ALJ specifically stated he considered the Listings 107.05

(Sickle Cell disease), 111.02 (Major motor seizure disorder). and 111.03 (Nonconvulsive epilepsy) when making his determination. (Tr. 11).

Plaintiff then requested a review of the hearing decision by the Appeals Council which, after considering additional evidence denied that request on November 17, 2008.[1]  (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1).  Both parties filed appeal briefs. (Docs. 12, 13).

By Order dated February 18, 2010, this case was administratively terminated and Defendant was directed to file a supplement to the administrative record containing the medical evidence submitted by Plaintiff to the Appeals Council. (Doc. 16).  Defendant filed this supplement on March 1, 2010.  (Doc. 17).

By Order dated March 2, 2010, Plaintiff's case was reopened and the parties were allowed to file a supplemental appeal brief. (Doc. 18).

This case is before the undersigned pursuant to the consent of the parties. (Doc. 4).  Both parties have filed supplemental appeal briefs, and the case is now ready for decision.  (Docs. 19, 20).

## II.   Evidence Presented:

At the administrative hearing held before the ALJ on April 8, 2008, Plaintiff testified T.A. was being treated at a sickle cell clinic in Monroe, Louisiana. (Tr. 26).  Plaintiff testified T.A. was four years of age.  (Tr. 26).  Plaintiff testified T.A. was in the Head Start program and that she thought T.A. was "doing good." Plaintiff testified T.A. goes into "crisis" twice a month.

---

[1]The Court notes the Appeals Council indicated it reviewed the ALJ's decision dated April 28, 2006.  (Tr. 1). However, the ALJ's decision is dated September 16, 2008.  (Tr. 20).

(Tr. 28).  Plaintiff testified that a crisis was an episode with terrible aching severe pain.  (Tr. 28-29).  Plaintiff explained the pain is usually in one spot, but that spot can be anywhere on the body.  Plaintiff testified that a crisis can last from an hour to six hours and can include a trip to the emergency room.  Plaintiff testified T.A. also experiences nose bleeds, fevers and sometimes seizures.  (Tr. 30).  Plaintiff testified T.A. has had around eight seizures in the past two years. (Tr. 31).  Plaintiff testified T.A. was "excellent in learning." (Tr. 32).  Plaintiff testified T.A. got along well with children and had a good personality.  (Tr. 33).

The medical evidence prior to the relevant time period reveals T.A. was diagnosed at birth with hemoglobin SC disease and has been seeking on-going follow up treatment mainly with the use of medication.  (Tr. 95-149, 158-197, 199, 209-211, 237-247, 273-329).

The medical evidence for the relevant time period reflects the following.  On July 19, 2006, Dr.  Majed Jeroudi noted T.A. was known to have hemoglobin SC. (Tr. 150, 234). Plaintiff reported T.A. had been "doing well."  Plaintiff reported T.A. visited the local hospital and that the medical staff did not do anything. Plaintiff reported T.A.'s fever was 105. T.A.'s medication consisted of penicillin, folic acid and Elidel cream for eczema.  Dr. Jeroudi noted Plaintiff was going to school and that T.A.'s grandmother was helping care for T.A.  Dr. Jeroudi noted T.A.'s development was appropriate for her age. Upon examination, he noted T.A. was alert, active and not in distress. T.A.'s temperature was 97.4. T.A. was diagnosed with hemoglobin SC and her medications were re-filled.  Dr. Jeroudi noted some retinal changes so he referred T.A. to ophthalmology as he was not sure if this was a normal variation or a problem to be concerned about. T.A. was to return in three months or sooner.

AO72A
(Rev. 8/82)

A Nursing Assessment completed on July 19, 2006, by Nurse Melissa Brown noted T.A. talked in full sentences and was learning her colors. (Tr. 153, 236). Nurse Brown noted T.A. had two mild crises since March of 2006 that did not require emergency room visits. Nurse Brown noted T.A. was having problems with ear infections.

On July 20, 2006, T.A. underwent a psychological evaluation at the South Arkansas Development Center performed by Ms. Sandy C. Huckabee, M.S., L.P.E., to determine T.A.'s level of developmental functioning. (Tr. 154-155, 156-158). Ms. Huckabee noted T.A. had been diagnosed with sickle cell anemia and that T.A. had had one febrile seizure.  Ms. Huckabee noted that according to her teacher, T.A. did not get along well with her peers, tended to play by herself, and had problems sharing, but had adequate table manners.  (Tr. 154). Ms. Huckabee noted T.A. was alert, "chatty," and cooperative, and that she expressed herself in two and three word phrases. (Tr. 154). T.A. was noted to be cooperative and required moderate cueing to complete evaluation tasks within the structure of standardization. Ms. Huckabee noted T.A. assembled ball and ice cream cone puzzles, matched three or more of four pictures, played with an object as if it represented something else, and placed nine of nine pieces in a blue board in 75 seconds. (Tr. 155). Ms. Huckabee opined that T.A.'s evaluation results did not indicate any developmental delay requiring treatment. (Tr. 155).  Ms. Huckabee recommended that due to T.A.'s sickle cell diagnosis, additional documentation be collected to demonstrate medical necessity for additional therapy.

On July 21, 2006, Dr. Jeroudi noted T.A. was "doing well" with no history of fever, cough, vomiting, or diarrhea. (Tr. 14, 150). T.A.'s systems were "essentially negative," her development was age-appropriate, and her laboratory blood tests showed normal blood cell

-4-

differential for her age. (Tr. 14, 151). Dr. Jeroudi refilled T.A.'s medications and instructed Plaintiff to follow-up in four months. (Tr. 151). An October 11, 2006 blood test also showed normal levels of red blood cells, white blood cells, and hemoglobin. (Tr. 200).

On October 18, 2006, T.A.'s grandmother noted T.A. had been doing well but had to visit the emergency room due to a fever. (Tr. 231). T.A.'s development was noted as age appropriate. After examining T.A., Dr. Jeroudi opined T.A.'s hemoglobin SC was in stable condition. T.A's medication was refilled. Dr. Jeroudi noted he was unsure if T.A. kept a previously referred ophthalmology appointment. T.A. was to return in four months or sooner if there were any complications.

A Nursing Assessment dated October 18, 2006, reported T.A. was talking in full sentences and learning her colors. (Tr. 233). T.A. was attending daycare. T.A.'s grandmother reported T.A. had seen Dr. Tolosa one month ago for a fever. T.A.'s grandmother was unsure of any crisis but reported T.A. had not been in the emergency room or hospitalized.

On November 6, 2006, in a Childhood Disability Evaluation Form, Dr. Billy McKellar, a non-examining, medical consultant, opined T.A. had "no limitation"in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for yourself; and "less than marked" limitation in the area of health and physical well-being. (Tr. 212-219).

On May 9, 2007, Dr. Jeroudi noted T.A.'s uncle reported T.A. was "doing okay" with no history of fever, cough, vomiting, or diarrhea. (Tr. 228). T.A.'s development was age appropriate. (Tr. 229). Dr. Jeroudi noted he needed a copy of T.A.'s vaccination record and the ophthalmology evaluation. Dr. Jeroudi's impression states sickle cell disease type SC.

-5-

A Nursing Assessment dated May 9, 2007, noted T.A. talked well and was attending day care. (Tr. 230). T.A.'s uncle reported T.A. had no complaints.

On September 12, 2007, Dr. Jeroudi noted T.A.'s uncle reported T.A. had been doing well. (Tr. 224). Dr. Jeroudi noted T.A. had no history of fever, cough, vomiting or diarrhea. Dr. Jeroudi indicated T.A. averaged one crisis a year or less. T.A.'s development was age appropriate. Dr. Jeroudi assessed T.A. with Hemoglobin SC. T.A.'s medication was refilled and sickle cell complications were discussed. T.A. was to return for a follow up in four to five months.

A Nursing Assessment completed on September 12, 2007, reported T.A. could count to five and that she was learning her colors. (Tr. 226). T.A.'s uncle reported T.A. had no crisis or hospitalizations since May of 2007.

On October 24, 2007, T.A. sought treatment for sinus congestion and discharge for the past few days. (Tr. 344). Plaintiff was diagnosed with an upper respiratory infection and sickle cell disease.

On February 13, 2008, Dr. Jeroudi examined T.A. and noted that, aside from a recent nosebleed, she was "doing well." (Tr. 221). Plaintiff reported one to two episodes of pain and stated T.A. had recently visited the emergency room because Tylenol and ibuprofen did not relieve her pain. (Tr. 221). Dr. Jeroudi described the pain as a "minor ache." Dr. Jeroudi noted T.A. was averaging "one to two crises at the present time." Dr. Jeroudi noted Plaintiff was going to school and that her grandmother helped with T.A.'s care. T.A.'s development was noted as age appropriate. T.A.'s diagnosis was sickle cell disease, type hemoglobin SC. Dr. Jeroudi re-filled T.A.'s medication and gave her a prescription for Tylenol with codeine for pain. Dr.

-6-

Jeroudi recommended a Von Willebrand's disease[2] work-up and recommended T.A. return for a follow up in four to five months. (Tr. 222).

A Nursing Assessment completed on February 13, 2008, noted T.A. was in the Head Start program and that T.A. spoke well. (Tr. 223). The nurse noted T.A. had a recent crisis dealing with her arms that required an emergency room visit. Plaintiff reported T.A. had been having a right-sided nose bleed and that T.A. had a crisis one week ago. Plaintiff was encouraged to keep T.A. hydrated.

T.A.'s February 25, 2008, blood work revealed that her red blood cell count, white blood cell count, and hemoglobin levels were within the expected range. (Tr. 248).

In a letter dated April 8, 2008, Dr. Elizabeth Callejo Tolosa stated T.A. had sickle cell disease, febrile seizures and a speech delay. (Tr. 220). Dr. Tolosa noted T.A.'s medications consisted of folic acid, Tylenol with Codeine as necessary for pain when in crisis, penicillin and pediapred liquid when in crisis. Dr. Tolosa noted T.A. had been her patient from December 2003 through June 2007.

On June 18, 2008, treatment notes indicate that T.A. was treated in the emergency room on June 16, 2008. (Tr. 354-360, 363-364), for fever and pain in her right leg joint. (Tr. 332). Dr. Jeroudi also wanted T.A. to undergo an ENT appointment because T.A.'s nose bleed was only on the left. Dr. Jeroudi noted Plaintiff reported T.A. had already been to an ENT who told Plaintiff to use Neosporin cream. Dr. Jeroudi recommended repeating T.A.'s ristocetin cofactor

_____

[2]von Willebrand disease is defined as a congenital bleeding disorder. See Dorland's Illustrated Medication, Dictionary at 551, 31st Edition (2007).

-7-

laborartory test.  T.A. was to return in four to five months or sooner if necessary.  Dr. Jeroudi also wanted a copy of the ENT report.

On August 19, 2008, T.A. presented to the Junction City Medical Clinic after experiencing leg pain and a nose bleed the previous night.  (Tr. 343).  The examiner noted T.A. had a mild pain crisis and resolved epistaxis.

On September 24, 2008, Dr. Rebecca A. Luper completed a Health Exam sheet for T.A. (Tr. 345).  T.A.'s basic screen was found to be normal.

A Nursing Assessment dated October 15, 2008, reported T.A. was in Head Start and was "doing very well." (Tr. 362).  The notes indicated T.A. had eye pain from July 12, 2008, until July 16, 2008; ankle pain on July 28, 2008, which was not as bad as before; a nose bleed on August 1, 2008; leg pain on August 15, 2008, which required a doctor visit, but resolved on August 26, 2008; and a nose bleed on September 8, 2008, September 19, 2008, and September 25, 2008.

## III.   Discussion:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have

-8-

decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

The regulations prescribe a three-step process for making the disability determination.  First, the ALJ must determine whether the child has engaged in substantial gainful activity.  See 20 C.F.R. 416.924(b).  Second, the ALJ must determine whether the child has a severe impairment or combination of impairments.  See 20 C.F.R. 416.924(c).  Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment.  See 20 C.F.R. § 416.924(d).  In the present case, the ALJ found that T.A.'s claim failed at step three, as T.A. did not have an impairment that met or medically or functionally equaled a listed impairment.  The ALJ specifically considered the Listings in 107.05, 111.02, and 111.03 when making this determination.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

First, we find there is substantial evidence on the record to support the ALJ's determination that T.A.'s impairments do not meet or medically equal in severity any listed impairment.  See 20 C.F.R. Part 404, Subpt. P, App. 1, Part B.  We next address whether T.A.'s impairments are functionally equal to any listed impairment, or, in other words, whether "what [T.A.] cannot do because of [her] impairments . . . is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria."  20 C.F.R. § 416.926a(a).

AO72A
(Rev. 8/82)

Functional equivalence may be established by demonstrating marked limitations in two, or extreme limitations in one of the following areas: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. See 20 C.F.R. § 416.92a(d).  The ALJ determined that the facts in this case suggest T.A. has no significant limitation in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for oneself; and "less than marked" limitation in the area of health and physical well-being.

We will now address each of the ALJ's domain determinations. With regard to acquiring and using information, the ALJ found T.A. had no limitations.  Plaintiff argues the ALJ erred in not relying on the evidence indicating delays in T.A.'s adaptive behavior and communication skills and the recommendation that T.A. receive therapeutic day treatment in 2005. (Doc. 12, p.17).  During the relevant time period, the evidence reveals T.A. was able to speak clearly. Furthermore, in 2006, the same examiner that had referred T.A. for therapeutic services in 2005, indicated that these services were no longer necessary.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that T.A. had no limitations in this area of functioning.

With regard to attending and completing tasks, the ALJ found T.A. had no limitations. The record shows T.A. was attending preschool and was doing very well.  Plaintiff testified at the administrative hearing in April of 2008, that T.A. was "doing good" in the Head Start program and that T.A. was "excellent in learning." Based on the entire evidence of record, we

-10-

find substantial evidence supporting the ALJ's determination that T.A. had no limitations in this area of functioning.

With regard to interacting and relating with others, the ALJ found T.A. had no limitations. Plaintiff argues that the record shows T.A. shows affection towards others but not sympathy or comfort. (Doc. 12, p.18). Plaintiff argues that T.A.'s teacher reported that T.A., who was almost three years of age, did not get along well with others. It is noteworthy that at the April 2008 administrative hearing, Plaintiff testified that T.A. got along well with children and had a good personality.   Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that T.A. had no limitations in this area of functioning.

With regard to moving about and manipulating objects, the ALJ determined T.A. had no limitations.  In July of 2006, an examiner noted T.A. assembled ball and ice cream cone puzzles, matched three or more of four pictures, played with an object as if it represented something else, and placed nine of nine pieces in a blue board in 75 seconds. In a Function Report dated September 13, 2006, Plaintiff indicated that T.A. could stand, walk, throw a ball, dance, jump up and down, run, stack small blocks, push/pull small toys, scribble and hold a crayon.  Medical records throughout the relevant time period indicate T.A. was developing normally.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that T.A. had no limitations in this area of functioning.

With regard to caring for oneself, the ALJ determined T.A. had no limitations.  In a Function Report dated September 2006, Plaintiff indicated T.A. cooperated in getting dressed and brushing her teeth, drank from a cup without help and fed herself with a spoon.  At that time, T.A., who was not quite three years of age, was noted to need help undressing herself.  Based on

-11-

the entire evidence of record, we find substantial evidence supporting the ALJ's determination that T.A. had no limitations in this area of functioning.

With regard to health and physical well-being, the ALJ determined T.A. had "less than marked" limitations.  In making this determination, the ALJ noted that while T.A. had been diagnosed with sickle cell disease, the evidence of record reveals T.A.'s symptoms have been well managed with the use of medication.  The ALJ noted that the evidence reveals T.A.'s follow-up records reveal T.A. had done well without more than one to two minor pain crises. The ALJ noted T.A. had also been able to maintain the ability to continue in her Head Start program and that T.A. continued to develop in an age appropriate manner.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that T.A. had "less than marked" limitations in this area of functioning.

Based on the foregoing, the Court finds substantial evidence to support the ALJ's determination that T.A.'s impairments are not functionally equal to any listed impairment.

## IV.   Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that Plaintiff's Complaint should be dismissed with prejudice.

DATED this 19th day of August 2010.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-12-